**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CIVIL NO. _____** |
| | * | |
| **DANCE MAKERS, INC.,** | * | **UNITED STATES COMPLAINT** |
| **SEE SAW COUTURE, INC.,** | * | **Jury Trial Demanded** |
| **BP CONSTRUCTION, INC., and** | * | |
| **ROBIN PITTS,** | * | |
| | * | |
| **Defendants.** | * | |
| | ********** | |

## **INTRODUCTION**

The United States brings this action for damages and statutory penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and the common law, including the equitable theories of unjust enrichment and payment by mistake, in connection with four federally guaranteed Paycheck Protection Program ("PPP") loans improperly obtained and retained by Dance Makers, Incorporated ("Dance Makers"), See Saw Couture, Incorporated ("See Saw Couture") and their owner, Robin Pitts, and an Economic Injury Disaster Loan ("EIDL"), and two related EIDL advances improperly obtained and retained by BP Construction, Incorporated ("BP Construction") and its resident agent, Robin Pitts (hereinafter "Pitts").

1. Taking advantage of the nation's crisis during the COVID-19 pandemic, Defendants Dance Makers, See Saw Couture, BP Construction and Pitts, sometimes collectively referred to herein as "the Defendants," made false or fraudulent statements and caused the submission of false claims to the United States to obtain federally guaranteed PPP and EIDL loans.

2.  Specifically, Defendants Dance Makers and Pitts improperly obtained and retained PPP loans for $85,600 (hereinafter, "First Dance Makers Loan" or "Dance Makers PPP Loan No. 1"), and $62,417 (hereinafter, "Second Dance Makers Loan" or "Dance Makers PPP Loan No. 2"), respectively, and despite the fact that Defendants Dance Makers and Pitts knew that Dance Makers had less than the number of employees falsely represented in the PPP loan applications.

3.  See Saw Couture and Pitts improperly obtained and retained PPP loans for $53,363 dollars (hereinafter, "First See Saw Couture Loan" or "See Saw PPP Loan No. 1") and $44,113 dollars (hereinafter, "Second See Saw Couture Loan" or "See Saw PPP Loan No. 2"), respectively, and despite the fact that Defendants See Saw Couture and Pitts knew that See Saw Couture had no employees.

4.  To be eligible for an EIDL, a business must have had substantial economic injury, that is, the business was unable to meet its financial obligations and pay its regular and necessary operating expenses. Loss of expected profits or a decline in sales is not considered substantial economic injury. BP Construction and Robin Pitts improperly obtained and retained an EIDL loan and EIDL advances in the sum of $90,000, collectively, even though the Defendants BP Construction and Robin Pitts knew that representations made concerning gross revenues were inflated when compared to identifiable revenues. Additionally, BP Construction had no employees when the EIDL loan and EIDL advances were sought but falsely represented that the business had fifteen employees and then subsequently represented falsely that BP Construction had nine employees. EIDL advances were determined based on the number of employees an applicant represented that it had on its EIDL application.

5.  As a result of the false representations made by the Defendants in connection with the

2

PPP and EIDL loan applications identified above, the Defendants caused the United States Small Business Administration ("SBA") to pay federal funds to financial institutions that disbursed the sum of $245,493.00 in PPP loans and $90,000.00, collectively, in EIDL loans and advances to Dance Makers, See Saw Couture and BP Construction.  If the Defendants had truthfully stated that Dance Makers had less than the number of employees represented in the Dance Makers PPP loan applications, Dance Makers would not have received each of its two PPP loans.  If the Defendants had truthfully represented that See Saw Couture had no employees, See Saw Couture would not have received each of its two PPP loans.  If the Defendants had truthfully stated that BP Construction had no employees, and did not have verifiable business expenses and profits, BP Construction's EIDL loan and two advances would not have been approved.  The Defendants' false statements and improper retention of the PPP and EIDL loans caused the United States to sustain a total singles loss of $337,328.31, which includes bank fees and interest the United States paid to the financial institutions which disbursed the loans to Defendants.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over the United States' claims brought under the FCA, 31 U.S.C. § 3729, *et seq*., pursuant to 31 U.S.C. §§ 3730 and 3732.  This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

7.  This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) and Rule 4 of the Federal Rules of Civil Procedure because, at all times material hereto Defendants Dance Makers, See Saw Couture and BP Construction transacted business in the District of Maryland; individual Defendant Pitts resided in the District of Maryland, and acts proscribed by

31 U.S.C. § 3729 occurred in this District.

8. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because Defendants Dance Makers, See Saw Couture and BP Construction can be found in the District of Maryland and individual Defendant Pitts resides in the District of Maryland. Furthermore, the acts that form the basis of this Complaint occurred in the District of Maryland.

**PARTIES**

9. The United States of America is the Plaintiff. The United States brings this action on behalf of the SBA, the federal agency that administers the PPP and the EIDL program.

10. Defendant Dance Makers is a corporation that purports to be a dance studio. The business address listed in its PPP loan applications is 9901 Business Parkway, Suite L, Lanham, Maryland.

11. Defendant See Saw Couture purports to be a clothing store. The business address listed in its PPP loan applications is 9901 Business Parkway, Suite L, Lanham, Maryland.

12. Defendant BP Construction purports to be a construction and masonry business. The business address listed in its EIDL loan application is 9901 Business Parkway, Suite L, Lanham, Maryland.

13. Defendant Robin Pitts has a residence in Bowie, Maryland. Pitts is the owner of Dance Makers and See Saw Couture. She signed Dance Makers' and See Saw Couture's PPP loan applications on behalf of both Defendant entities.

14. At all times relevant to the conduct alleged, Defendant Robin Pitts was the Resident Agent for BP Construction. The email address listed on the EIDL application and advances as a

means of contacting BP Construction listed the name "Robin" in the email address.  The Internet Protocol ("IP") address from which the BP Construction EIDL application and advances originated is the same IP address from which the PPP loan applications for Defendants Dance Makers and See Saw Couture originated.

15.  An IP address identifies the Internet Service Provider or "ISP" associated with an IP address.  Information obtained from Verizon revealed that the IP address from which the PPP loan applications for Defendants Dance Makers, See Saw Couture and BP Construction originated was assigned to Dance Makers, a company Defendant Pitts owns.

## LEGAL BACKGROUND – APPLICABLE FEDERAL LAWS

### I.  The False Claims Act

16.  The FCA, in pertinent part, provides that any person who: "(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or claim" is liable to the United States. 31 U.S.C. § 3729.

17.  The statute also establishes liability for knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government.  *Id*. at § 3729(a)(1)(G).

18.  For purposes of the FCA, the terms "knowing" and "knowingly" mean that a person: (1) has actual knowledge of the information in question; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1).  No proof of specific intent to defraud is required.  *Id.*

19.  As defined in the FCA, the term "claim" means any request or demand for money or property that is presented or caused to be presented to the United States; or that is made to a contractor, grantee, or other recipient, if the money is to be spent or used on behalf of the Government or to advance a Government program or interest, so long as the United States provides or has provided any portion of the subject money or property or will reimburse such contractor, grantee, or other recipient for any portion of the subject money or property.  31 U.S.C. § 3729(b).

20.  The False Claims Act defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

21.  The FCA provides for a recovery of three times the damages sustained by the United States (treble damages), plus a civil penalty for each violation.  31 U.S.C. § 3729(a)(1). Pursuant to the Bipartisan Budget Act of 2015, all civil statutory penalties, including those set forth in the FCA, are required to be adjusted annually for inflation.  *See* Pub. Law. No. 114-74, § 701, 129 Stat. 584, 599.  FCA penalties for violations occurring after November 2, 2015, are no less than $14,308 and no more than $28,619 for each violation.  *See* 28 C.F.R. § 85.5 (Adjustments to penalties for violations occurring after November 2, 2015).

**II. The CARES Act and Paycheck Protection Program and Economic Injury Disaster Loan Program**

**A. Overview of the PPP**

22.   On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") (Pub. L. 116-136) was enacted to provide emergency assistance and health care response for individuals, families, and businesses affected by the Coronavirus Disease 2019 (COVID-19) pandemic.

23.   The SBA did not make PPP loans directly.  Rather the CARES Act, in Section 1102(F)(ii)(I), delegated authority to private lenders to make and approve PPP loans pursuant to PPP requirements.  *See* 15 U.S.C. § 636(a)(36)(F)(ii)-(iii).

24.   Section 1102 of the CARES Act temporarily permitted the SBA to guarantee one hundred percent of 7(a) loans made by participating lenders under a new program titled the "Paycheck Protection Program," pursuant to section 7(a)(36) of the Small Business Act.  15 U.S.C. 636(a)(36).  Section 1106 of the CARES Act also provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

25.   In order to obtain a PPP loan, a qualifying business, through its authorized representative, signed and submitted a PPP loan application to the lender with delegated authority from the SBA, using SBA Form 2483 (hereafter "Application Form 2483").  Application Form 2483 required the applicant to acknowledge the PPP program rules and make certain affirmative certifications regarding program eligibility.

26.  If the lender approved the borrower's application, the lender submitted information from the borrower's application to the SBA via the agency's electronic "E-Tran" processing system.  E-Tran prompted the lender to enter information from Application Form 2483 into certain

7

data fields.  Based on the lender's electronic submission, the loan was assigned a loan number, and the SBA provided a loan guarantee to the lender.  The lender then disbursed the loan to the borrower using its own funds and notified the SBA that the loan was fully disbursed.  Upon receipt of that notification, the SBA paid the lender a processing fee.  *See* 15 U.S.C. § 636(a)(36)(P).  *See also* 85 Fed. Reg. 20811, 20816.

27.  To be eligible for a PPP loan in 2020, a borrower was required to have documented eligible payroll expenses or, in the case of sole proprietorships, owner compensation.

28.  If a borrower met all other eligibility criteria and had payroll expenses or owner compensation, the dollar amount of a PPP loan was generally determined by the company's average monthly payroll costs for the one-year period before the date the loan was made, multiplied by 2.5.  The PPP loan application further stated, "For purposes of calculating 'Average Monthly Payroll,' most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized bases for each employee."

29.  A PPP loan recipient could apply for forgiveness at any time, up to the maturity date of the loan, after all loan proceeds were used.  If borrowers did not apply for forgiveness within ten months after the maturity date, then PPP loan payments were no longer deferred; borrowers had to begin making loan payments to their PPP lender.  If a borrower's PPP loan was over 60 days past due, the lender could request purchase of the loan by the SBA pursuant to the agency's loan guarantee.

30.  The CARES Act permitted borrower loan forgiveness for PPP funds used for certain expenses. *See* CARES Act, Pub. L. No. 116-136, § 1106, 134 Stat. 281, 297 (Mar. 27, 2020).  To apply for PPP loan forgiveness, borrowers submitted loan forgiveness applications to their lenders,

and lenders then issued a forgiveness decision to the SBA. *See* 85 Fed. Reg. 33004, 33005 (June 1, 2020); 85 Fed. Reg. 38304, 38306 (June 26, 2020). If a borrower received loan forgiveness, the SBA issued forgiveness payments to lenders. *See* 85 Fed. Reg. 33010, 33013 (June 1, 2020); 85 Fed. Reg. 38304, 38306 (June 26, 2020). If a borrower's forgiveness application was denied (in whole or in part) or the borrower otherwise defaulted on the PPP loan, the lender could request that the SBA purchase the guaranty of the PPP loan. *See* SBA Procedural Notice, No. 5000-812316 (July 15, 2021). So long as lenders adhered to the program requirements, the SBA would guarantee the unforgiven or defaulted loan amounts. *See* 15 U.S.C. § 626(a)(2)(F); 85 Fed. Reg. 20811, 20816 (Apr. 15, 2020); 86 Fed. Reg. 8283, 8294 (Feb. 5, 2021).

**B. Overview of the EIDL Program**

31. The SBA also offered an Economic Injury Disaster Loan (EIDL) and/or an EIDL advance up to $10,000.00 dollars to help businesses meet their financial obligations.

32. The EIDL program provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. *See*, *e.g.*, 13 C.F.R. § 123.300. Through the CARES Act, the SBA was authorized to provide an EIDL to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. *See, e.g.*, 15 U.S.C. § 636(b)(2).

33. To obtain an EIDL, a small business submitted an electronic EIDL application (SBA Form 5) directly to the SBA via its website, covid19relief.sba.gov. The EIDL application could be certified by an authorized representative of the business. The EIDL application required the business, through its authorized representative, to acknowledge the program rules and to make certain certifications in order to be eligible for the EIDL loan.

34. The authorized representative of the small business certified eligibility information. Further, the authorized representative submitted information about the qualifying business's operations such as the number of employees and gross revenues for the 12-month period preceding the disaster. Regarding operating expenses, the authorized representative submitted Combined Annual Operating Expenses for the 12 months prior to January 31, 2020 as well as Gross Revenues and Costs of Goods Sold for that same period. Loans were calculated based on 6 months of Gross Revenues minus Cost of Goods Sold or six months of gross profit.

35. Applicants could also receive a Targeted EIDL Advance of up to $10,000.00 if they were in a low-income community, could demonstrate more than a 30 percent reduction in revenue during an eight-week period beginning on March 2, 2020, or later, and had 300 or fewer employees. A Targeted EIDL Advance did not have to be repaid. *See, e.g.,* Section 331 of the Economic Aid Act, Pub. L. 116-260 (Dec. 27, 2020). Applicants could also seek a Supplemental Targeted Advance ("STA") of $5,000 from the SBA, an advance that did not have to be repaid. To qualify for the STA, businesses needed to be located in a low-income community, demonstrate a greater than 50 percent economic loss during a specific COVID-19 period, and have 10 or fewer employees. *See, e.g.*, Section 5002 of the American Rescue Plan Act, Pub. L. 117-2 (Mar. 11, 2021); 15 U.S.C. § 9009(b) – Targeted EIDL Advance for Small Business Continuity, Adaptation, and Resiliency.

36. EIDL applications, including applications for a Targeted EIDL Advance and a STA, were processed by the SBA.

37. If an EIDL application or Targeted EIDL Advance or STA was approved, the SBA issued the EIDL loan or Targeted EIDL Advance or STA through a deposit to a bank account of

the business borrower.  The amount of the EIDL loan, if the application was approved, was based on the number of employees claimed on the EIDL application.  For a Targeted EIDL Advance, borrowers were awarded $1,000.00 per employee, for a maximum of 10 employees.  A STA provided borrowers with a lump sum of $5,000 if the borrower had 10 or fewer employees noted in their EIDL application.  Supplemental information submitted with the application, about employment, revenue, and cost of goods, is described in Paragraph 35 of this Complaint.

38.  EIDL proceeds were required to be used by the business on certain permissible expenses—fixed debts including rent and utilities, payroll, accounts payable and other bills resulting from the pandemic.  *See* 13 C.F.R. § 123.303.

<strong><u>DEFENDANTS' FRAUDULENT CONDUCT</u></strong>

39.  The Defendants knowingly made and caused false claims and statements to be presented to the SBA to obtain and retain improperly the funds of four separate PPP loans administered by the SBA, one EIDL loan, one Targeted EIDL Advance, and one STA, which were also administered by the SBA.

40.  Dance Makers – through Robin Pitts – improperly applied for and received two PPP loans for $85,600 and $62,417, respectively, by falsely inflating the number of employees employed by the entity in violation of PPP loan eligibility rules.

41.  See Saw Couture, through Robin Pitts, improperly applied for and received two PPP loans for $53,363 and $44,113 by falsely inflating the number of employees employed by See Saw Couture and submitting false bank records in violation of PPP loan eligibility rules.

42.  BP Construction – through Robin Pitts – improperly applied for and received an EIDL loan for $75,000 by falsely representing on BP Construction's EIDL application its profits and

gross revenue, gross, or revenue statements made on BP Construction's EIDL application.

43.    BP Construction's EIDL application contained the false representation that BP Construction's gross receipts for January 2020 were $95,000.00 dollars when, in actuality, its gross revenue was $9,298.00 dollars -- a difference of $85,702.00 dollars. Additionally, BP Construction's EIDL application contained a false representation that its monthly revenue was $46,989.66 in order to obtain a higher EIDL than would otherwise have been approved for BP Construction if truthful financial information was provided on the EIDL application in compliance with EIDL loan eligibility rules. BP Construction's monthly revenue, in actuality, did not exceed more than $10,000.00 dollars.

44.    BP Construction – through Robin Pitts – improperly applied for and received a Targeted EIDL Advance in the amount of $10,000 despite having no employees in violation of CARES Act loan eligibility rules.

45.    BP Construction – through Robin Pitts – improperly applied for and received a Supplemental Targeted Advance in the amount of $5,000 despite having no employees in violation of CARES Act eligibility rules.

### Dance Makers PPP Loans 1 and 2

46.    With respect to Dance Makers, on or about May 1, 2020, Dance Makers submitted Application Form 2483 to lender PNC Bank seeking a PPP loan ("Dance Makers PPP Loan No. 1") for $85,600. Pitts signed the loan application on behalf of Dance Makers, attesting that the entity had fifteen employees and further that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects." Pitts knew that Dance Makers did not have fifteen employees as represented in the loan

application and thus the certification set forth above was false and Dance Makers was not eligible to receive a PPP loan in the amount of $85,600.

47. Pitts identified herself in the Dance Makers PPP Loan No. 1 application as the President of Dance Makers, with an 80% ownership interest.

48. Based on the application and the eligibility certification therein, PNC Bank submitted information from Application Form 2483 to the SBA electronically. The electronic submission caused the SBA to assign a loan number and provide a loan guarantee to PNC Bank. On or about May 1, 2020, PNC Bank disbursed loan number 6820177710 in the amount of $85,600 and notified the SBA that the loan had been funded.

49. On or about August 16, 2021, Defendant Dance Makers, through Pitts, applied for loan forgiveness for the Dance Makers PPP Loan No. 1 in the full amount of the loan, that is, $85,600. On the forgiveness application form, Pitts stated that Dance Makers had twenty-four "[e]mployees at time of loan application" and that Dance Makers had twenty-four employees "at time of forgiveness application."

50. The loan forgiveness application submitted by Defendant Dance Makers expressly warned that, "The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application." In the forgiveness application, Defendant Dance Makers falsely certified, expressly or impliedly, that Dance Makers was eligible for the loan, that Dance Makers satisfied all PPP rules and requirements with regard to the loan, and that Dance Makers was eligible for loan forgiveness in the full amount of the loan.

51. The SBA, on or about August 23, 2021, approved forgiveness for Dance Makers PPP

13

Loan No. 1 in the amount of $85,600 and paid $1,108.04 in interest to PNC Bank.

52. On or about February 17, 2021, Dance Makers submitted Application Form 2483 to lender PNC Bank seeking a second PPP loan ("Dance Makers PPP Loan No. 2") for $62,417. Pitts signed the loan application on behalf of Dance Makers, attesting that the entity had twenty-four employees and further that "the information provided in all supporting documents and forms is true and accurate in all material respects." Pitts knew that Dance Makers did not have twenty-four employees as represented in the loan application and thus the certification set forth above was false and Dance Makers was not eligible to receive a PPP loan in the amount of $62,417.

53. Pitts identified herself in the Dance Makers PPP Loan No. 2 application as the President of Dance Makers, with a 100% ownership interest.

54. Based on the application and the eligibility certification therein, PNC Bank submitted information from Application Form 2483 to the SBA electronically. The electronic submission caused the SBA to assign a loan number and provide a loan guarantee to PNC Bank. On or about February 17, 2021, PNC Bank disbursed loan number 9702308406 in the amount of $62,417 and notified the SBA that the loan had been funded.

55. On or about, September 23, 2021, Defendant Dance Makers, through Pitts, applied for loan forgiveness for the Dance Makers PPP Loan No. 2 in the full amount of the loan, that is, $62,417. On the forgiveness application form, Pitts stated that Dance Makers had twenty-four "[e]mployees at time of loan application" and that Dance Makers had twenty-four employees "at time of forgiveness application."

56. The loan forgiveness application submitted by Defendant Dance Makers in connection with Dance makers PPP Loan No. 2 again expressly warned that "The Borrower's eligibility for

14

loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application."  In the forgiveness application, Defendant Dance Makers falsely certified, expressly or impliedly, that Dance Makers was eligible for the loan, that Dance Makers satisfied all PPP rules and requirements with regard to the loan, and that Dance Makers was eligible for loan forgiveness in the full amount of the loan.

57.   The SBA, on or about September 30, 2021, approved forgiveness for Dance Makers PPP Loan No. 2 in the amount of $62,417 and paid $386.64 in interest to PNC Bank.

58.   Records from the Maryland Department of Labor showed that between the years 2020 and 2022, and at the time of both Dance Makers' PPP Loan Numbers 1 and 2,  Dance Makers never had more than ten non-contractual employees.  Dance Makers had only six employees during the first PPP loan period (Dance Makers PPP Loan No. 1) and had between five (first quarter of 2021) and six (second quarter of 2021) employees during the second PPP loan period (Dance Makers PPP Loan No. 2).

### See Saw Couture PPP Loans 1 and 2

59.   On or about February 24, 2021, See Saw Couture submitted Application Form 2483 to lender Capital One Bank seeking a PPP loan ("See Saw Couture PPP Loan No. 1") for $53,363. Pitts signed the loan application on behalf of See Saw Couture, attesting that the entity had fifteen employees and further that "the information provided in all supporting documents and forms is true and accurate in all material respects."  Pitts knew that See Saw Couture did not have fifteen employees as represented in the loan application and thus the certification set forth above was false and See Saw Couture was not eligible to receive a PPP loan in the amount of $53,363.

60.  Pitts was identified in the See Saw Couture PPP Loan No. 1 application as the President

of See Saw Couture, with an 85% ownership interest.

61.   Based on the application and the eligibility certification therein, Capital One Bank submitted information from Application Form 2483 to the SBA electronically.  The electronic submission caused the SBA to assign a loan number and provide a loan guarantee to Capital One Bank.   On or about February 27, 2021, Capital One Bank disbursed loan number 2185328509 in the amount of $53,363 and notified the SBA that the loan had been funded.

62.   On or about July 9, 2021, Defendant See Saw Couture, through Pitts, applied for loan forgiveness for the See Saw Couture PPP Loan No. 1 in the full amount of the loan, that is, $53,363. On the forgiveness application form, Pitts stated that See Saw Couture had fifteen "[e]mployees at time of loan application" and that See Saw Couture had fifteen employees "at time of forgiveness application."

63.   The loan forgiveness application submitted by Defendant See Saw Couture again expressly warned that "The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application."   In the forgiveness application, Defendant See Saw Couture falsely certified, expressly or impliedly, that See Saw Couture was eligible for the loan, that See Saw Couture satisfied all PPP rules and requirements with regard to the loan, and that See Saw Couture was eligible for loan forgiveness in the full amount of the loan.

64.   The SBA, on or about July 20, 2021, forgave the See Saw Couture PPP Loan No. 1 in the amount of $53,363 and paid $211.97 in interest to Capital One Bank.

65.   On or about May 4, 2021, See Saw Couture submitted Application Form 2483 to lender Capital One Bank, seeking a second PPP loan ("See Saw Couture PPP Loan No. 2") for $44,113.

16

Pitts's inked signature and E-signature appeared on the See Saw Couture PPP loan application as the signatory on the loan application on behalf of See Saw Couture, attesting that the entity had nine employees and further that "the information provided in all supporting documents and forms is true and accurate in all material respects." Pitts knew that See Saw Couture did not have nine employees as represented in the loan application and thus the certification set forth above was false and See Saw Couture was not eligible to receive a PPP loan in the amount of $44,113.

66. Pitts was identified in the See Saw Couture PPP Loan No. 2 application as the President of See Saw Couture, with an 85% ownership interest.

67. Based on the application and the eligibility certification therein, Capital One Bank submitted information from Application Form 2483 to the SBA electronically. The electronic submission caused the SBA to assign a loan number and provide a loan guarantee to Capital One Bank. On or about May 4, Capital One Bank disbursed loan number 4663898902 in the amount of $44,113 and notified the SBA that the loan had been funded.

68. On or about August 19, 2021, Defendant See Saw Couture, through Pitts, applied for loan forgiveness for the See Saw Couture PPP Loan No. 2 in the full amount of the loan, that is, $44,113. On the forgiveness application form, Pitts falsely stated that See Saw Couture had nine "[e]mployees at time of loan application" and that it had nine employees "at time of forgiveness application."

69. The loan forgiveness application submitted by Defendant See Saw Couture, through Pitts, again expressly warned that "The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application." In the forgiveness application, Defendant See Saw Couture falsely certified,

17

expressly or impliedly, that See Saw Couture was eligible for the loan, that See Saw Couture satisfied all PPP rules and requirements with regard to the loan, and that See Saw Couture was eligible for loan forgiveness in the full amount of the loan.

70.   The SBA, on or about August 24, 2021, forgave See Saw Couture PPP Loan No. 2 in the amount of $44,113 and paid $128.66 in interest to Capital One Bank.

71.   Records from the Maryland Department of Labor showed that at the time of See Saw Couture PPP Loans No. 1 and No. 2, See Saw Couture had no employees.

72.   At the time of the See Saw Couture's PPP Loan Application No. 1 and No. 2, Defendant See Saw Couture submitted payroll records that were identified as a "Paychex Payroll Journal" in support of See Saw Couture's PPP Loan No. 1 and No. 2 to Capital One Bank.  The Paychex Payroll Journal, submitted to Capital One Bank as proof that See Saw Couture had employees, was fabricated in order to obtain PPP Loan Nos. 1 and 2.

73.   Records obtained from Paychex, a company that offers other businesses payroll, benefits, and other services, showed that Paychex did not have a payroll account for See Saw Couture at all.  The payroll records See Saw Couture submitted to Capital One Bank for PPP Loan No 1 and No. 2 did not correspond to a legitimate Paychex payroll account for the See Saw Couture business.  The Payroll Journal records instead bore a fictitious Paychex account number.  Other Paychex documents, that is IRS Form 941, which is the Employer's Quarterly Federal Tax Return, submitted to Capital One Bank in support of See Saw Couture's PPP loan applications, contained a Paychex account number corresponding to the Paychex account number for the Dance Makers entity, another business controlled by Robin Pitts.

**BP Construction EIDL Loan and Targeted and Supplemental Advances**

74. On or about December 13, 2020, BP Construction, through Robin Pitts, submitted SBA Form 5 to the SBA seeking an EIDL loan in the amount of $75,000. The EIDL application contained the representation that the business had fifteen employees and contained a certification that the information supplied in the application was true and correct.

75. On December 31, 2020, the SBA disbursed loan number 9624078206, corresponding to EIDL Application Number 3315585803, to BP Construction in the amount of $75,000 dollars.

76. On or about June 3, 2021, BP Construction, through Robin Pitts, applied for a Targeted EIDL Advance in the amount of $10,000 dollars, representing falsely in the application that BP Construction had nine employees. BP Construction certified that the information supplied in the application was true and correct.

77. The SBA disbursed the Targeted EIDL Advance in the amount of $10,000 dollars to BP Construction on August 24, 2021.

78. On or about June 3, 2021, BP Construction, through Robin Pitts, applied for a STA in the amount of $5,000, representing falsely in the application that BP Construction had fifteen employees. Although the BP Construction application initially contained the representation that it had fifteen employees, subsequently, Pitts advised the SBA that the number of employees was nine in number. Eligibility for a STA required that the business have 10 or fewer employees, be located in a low-income community, and have suffered greater than 50 percent economic loss. BP Construction's initial representation that it had fifteen employees would have made it ineligible for a STA. The employee number was revised by BP Construction to qualify for the STA. BP Construction was ineligible for the STA because it actually had zero employees as reflected by the

absence of an employer account with the Maryland Department of Labor, no federal tax filings for the business which would have noted the number of employees, and BP Construction's bank statements which did not reflect payroll deductions. The Supplemental Targeted Advance, that is, the STA, in the amount of $5,000 dollars was disbursed to BP Construction on August 23, 2021.

79.   Although Robin Pitts was not the listed owner of BP Construction, she was identified as its Resident Agent.  The same Internet Protocol address used to submit See Saw Couture's and Dance Maker's PPP loan applications was also used to submit BP Construction's EIDL application.   The   primary   contact   email   on   the   EIDL   application   was Robin@BPmasonaryconstruction.com and submission of the EIDL application occurred via that same email address.

80.   At the time that BP Construction, through Robin Pitts, applied for the EIDL loan, Targeted EIDL Advance and the STA, BP Construction had no employees.

81.   Records obtained from the State of Maryland's Department of Labor and Licensing attested to the lack of any employer account for BP Construction, signifying the absence of any employees of the business during the time period when BP Construction, through Robin Pitts, applied for the EIDL and Targeted EIDL Advance and the STA .

82.   The false and fraudulent statements and claims alleged herein were material to the SBA's decision to guarantee the Dance Makers and See Saw Couture PPP loans.

83.   The false and fraudulent statements and claims alleged herein were material to the SBA's decision to fund the BP Construction EIDL loan and to provide BP Construction a Targeted EIDL Advance and Supplemental Targeted Advance.

84.   As a result of Dance Makers', See Saw Couture's, and BP Construction's fraudulent

scheme and knowingly false representations of PPP eligibility (Dance Makers and See Saw Couture) and EIDL eligibility (BP Construction), the Defendants received CARES Act and EIDL funding that the Defendants would not have received but for the false statements and knowing and improper retention of the PPP and EIDL Loans as alleged herein.

<b><u>COUNT I</u></b><br>
<b>(Against Defendants Dance Makers and Robin Pitts – 2 PPP Loans)</b><br>
<b>False Claims Act: Causing Presentation of False Claim for Payment</b><br>
<b>(31 U.S.C. § 3729(a)(1)(A))</b>

85. The United States re-alleges and incorporates herein by reference paragraphs 1 through 84 as if fully set forth herein.

86. By virtue of the acts described above, Defendants knowingly presented or caused to be presented materially false or fraudulent claims for payment or approval to the SBA in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), that is, Defendants knowingly and falsely stated in Application Form 2483 that Dance Makers had employees to support the two corresponding Dance Makers PPP loans identified herein and that the Defendant company was eligible under applicable rules and regulations, that resulted in the SBA guaranteeing the full amount of the loans, and ultimately purchasing and forgiving Dance Makers' PPP Loan Numbers 1 and 2. Thereafter, in the forgiveness applications for Dance Makers' PPP loans 1 and 2 identified herein, Defendant Dance Makers falsely certified, expressly or impliedly, that Defendant Dance Makers satisfied all PPP rules and requirements with regard to the loans corresponding to the Defendant, and that Defendant Dance Makers was eligible for loan forgiveness in the full amount of PPP Loan Numbers 1 and 2.

87. The United States was unaware of the falsity of the records, statements, and claims Defendants made, submitted, or caused to be submitted.

88. The false or fraudulent representations and claims the Defendants knowingly made to the United States were material to the United States' decisions to make payments to the Defendants.

89. By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false and fraudulent claim.

**COUNT II**
**(Against Defendants See Saw Couture, Inc., and Robin Pitts – 2 PPP Loans)**
**False Claims Act: Causing Presentation of False Claim for Payment**
**(31 U.S.C. § 3729(a)(1)(A))**

90. The United States re-alleges and incorporates herein by reference paragraphs 1 through 89 as if fully set forth herein.

91. By virtue of the acts described above, Defendants knowingly presented or caused to be presented materially false or fraudulent claims for payment or approval to the SBA in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), that is, Defendants knowingly and falsely stated in Application Forms 2483 that See Saw Couture had employees to support the two corresponding PPP loans identified herein and that the Defendant company was eligible under applicable rules and regulations, that resulted in the SBA guaranteeing the full amount of the loans, and ultimately purchasing and forgiving See Saw Couture's PPP Loan Numbers 1 and 2. Thereafter, in the forgiveness applications for the two PPP loans identified herein, Defendant See Saw Couture falsely certified, expressly or impliedly, that Defendant See Saw Couture satisfied all PPP rules and requirements with regard to the loans corresponding to Defendant, and that Defendant See Saw Couture was eligible for loan forgiveness in the full amount of the loans.

92. The United States was unaware of the falsity of the records, statements, and claims

22

Defendants made, submitted, or caused to be submitted.

93. The false or fraudulent representations and claims the Defendants knowingly made to the United States were material to the United States' decisions to make payments to the Defendants.

94. By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false and fraudulent claim.

**COUNT III**
**(Against Defendants BP Construction and Robin Pitts – EIDL)**
**False Claims Act: Causing Presentation of False Claim for Payment**
**(31 U.S.C. § 3729(a)(1)(A))**

95. The United States re-alleges and incorporates herein by reference paragraphs 1 through 94 as if fully set forth herein.

96. By virtue of the acts described above, Defendants knowingly presented or caused to be presented materially false or fraudulent claims for payment or approval to the SBA in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), that is, Defendants knowingly and falsely stated in SBA Form 5 that BP Construction had employees and verifiable gross revenues to support the corresponding EIDL loan identified herein and that Defendant BP Construction was eligible under applicable rules and regulations for the loan, resulting in the SBA disbursing the full amount of the EIDL loan sought by Defendant BP Construction.

97. The United States was unaware of the falsity of the records, statements, and claims Defendants made, submitted, or caused to be submitted.

98. The false or fraudulent representations and claims the Defendants BP Construction and

Robin Pitts knowingly made to the United States were material to the United States' decisions to make the EIDL loan to Defendant BP Construction.

99.  By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false and fraudulent claim.

## COUNT IV
**(Against Defendants BP Construction and Robin Pitts – EIDL Targeted Advance)**
**False Claims Act: Causing Presentation of False Claim for Payment**
**(31 U.S.C. § 3729(a)(1)(A))**

100.  The United States re-alleges and incorporates herein by reference paragraphs 1 through 99 as if fully set forth herein.

101.  By virtue of the acts described above, Defendants knowingly presented or caused to be presented materially false or fraudulent claims for payment or approval to the SBA in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), that is, Defendants knowingly and falsely stated in SBA Form 5 that BP Construction had the minimum number of employees to support the corresponding EIDL Targeted Advance identified herein and that Defendant BP Construction was eligible for such advance under applicable rules and regulations, resulting in the SBA disbursing the full amount of the EIDL Targeted Advance sought by Defendant BP Construction.

102.  The United States was unaware of the falsity of the records, statements, and claims Defendants made, submitted, or caused to be submitted.

103. The false or fraudulent representations and claims the Defendants BP Construction and Robin Pitts knowingly made to the United States were material to the United States' decisions to make payments to Defendant BP Construction.

104.  By reason of the foregoing, the United States has been damaged in an amount to be

determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false and fraudulent claim.

**COUNT V**
**(Against Defendants BP Construction and Robin Pitts --**
**EIDL Supplemental Advance)**
**False Claims Act: Causing Presentation of False Claim for Payment**
**(31 U.S.C. § 3729(a)(1)(A))**

105.   The United States re-alleges and incorporates herein by reference paragraphs 1 through 104 as if fully set forth herein.

106.   By virtue of the acts described above, Defendants knowingly presented or caused to be presented materially false or fraudulent claims for payment or approval to the SBA in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), that is, Defendants knowingly and falsely stated in SBA Form 5 that BP Construction had the minimum number of employees to support the corresponding EIDL Supplemental Advance identified herein and that Defendant BP Construction was eligible for such advance under applicable rules and regulations, resulting in the SBA disbursing the full amount of the EIDL Supplemental Advance sought by Defendant BP Construction.

107.   The United States was unaware of the falsity of the records, statements, and claims Defendants made, submitted, or caused to be submitted.

108.   The false or fraudulent representations and claims the Defendants BP Construction and Robin Pitts knowingly made to the United States were material to the United States' decisions to make the EIDL Supplemental Advance to Defendant BP Construction.

109.   By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each

false and fraudulent claim.

**COUNT VI**
**(Against Defendants Dance Makers and Robin Pitts – 2 PPP Loans)**
**False Claims Act: False Records or Statements Material to**
**A False or Fraudulent Claim**
**(31 U.S.C. § 3729(a)(1)(B))**

110.   The United States re-alleges and incorporates herein by reference paragraphs 1 through 109 as if fully set forth herein.

111.   By virtue of the acts described above, Defendants made, used, or caused to be made or used, false records or statements – namely, false claims and false statements in their applications for the Dance Makers PPP Loans 1 and 2 that resulted in the SBA guaranteeing the full amount of the loans, and ultimately purchasing and forgiving the loans – all of which were material to false or fraudulent claims that were submitted to the United States and paid and approved by the SBA, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

112.   Defendants' false certifications and representations were made for the purpose of ensuring that the United States paid the false or fraudulent claims, which was a reasonable and foreseeable consequence of the Defendants' conduct.

113.   The United States was unaware of the falsity of the records, statements, and claims Defendants made, submitted, or caused to be made or submitted, and in reliance on the accuracy of these records or statements, the United States paid false or fraudulent claims.

114.   The false and fraudulent representations and claims Defendants knowingly made to the United States were material to the United States' decisions to make payments to Defendants.

115.   By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each

false and fraudulent claim.

**<u>COUNT VII</u>**
**(Against Defendants See Saw Couture and Robin Pitts – 2 PPP Loans)**
**False Claims Act: False Records or Statements Material to**
**A False or Fraudulent Claim**
**(31 U.S.C. § 3729(a)(1)(B))**

116.   The United States re-alleges and incorporates herein by reference paragraphs 1 through 115 as if fully set forth herein.

117.   By virtue of the acts described above, Defendants made, used, or caused to be made or used, false records or statements – namely, false claims and false statements in their applications for the See Saw Couture PPP Loan Numbers 1 and 2, respectively, that resulted in the SBA guaranteeing the full amount of the loans, and ultimately purchasing and forgiving the loans – all of which were material to false or fraudulent claims that were submitted to the United States and paid and approved by the SBA, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

118.   Defendants' false certifications and representations were made for the purpose of ensuring that the United States paid the false or fraudulent claims, which was a reasonable and foreseeable consequence of the Defendants' conduct.

119.   The United States was unaware of the falsity of the records, statements, and claims Defendants made, submitted, or caused to be made or submitted, and in reliance on the accuracy of these records or statements, the United States paid false or fraudulent claims.

120.   The false and fraudulent representations and claims Defendants knowingly made to the United States were material to the United States' decisions to make payments to Defendants.

121.   By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each

27

false and fraudulent claim.

## COUNT VIII
### (Against Defendants BP Construction and Robin Pitts - EIDL)
### False Claims Act: False Records or Statements Material to
### A False or Fraudulent Claim
### (31 U.S.C. § 3729(a)(1)(B))

122.   The United States re-alleges and incorporates herein by reference paragraphs 1 through 121 as if fully set forth herein.

123.   By virtue of the acts described above, Defendants made, used, or caused to be made or used, false records or statements – namely, false claims and false statements in the applications for the BP Construction EIDL loan that resulted in the SBA disbursing the full amount of the BP Construction EIDL loan – all of which were material to the false or fraudulent claim that was submitted to the United States and paid and approved by the SBA, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

124.   Defendants' false certifications and representations were made for the purpose of ensuring that the United States paid the false or fraudulent claims, which was a reasonable and foreseeable consequence of the Defendants' conduct.

125.   The United States was unaware of the falsity of the records, statements, and claims Defendants made, submitted, or caused to be made or submitted, and in reliance on the accuracy of these records or statements, the United States paid false or fraudulent claims.

126.   The false and fraudulent representations and claims Defendants knowingly made to the United States were material to the United States' decisions to make payments to Defendants.

127.   By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each

false and fraudulent claim.

### COUNT IX
**(Against Defendants BP Construction and Robin Pitts – EIDL Targeted Advance)**
**False Claims Act: False Records or Statements Material to**
**A False or Fraudulent Claim**
**(31 U.S.C. § 3729(a)(1)(B))**

128.   The United States re-alleges and incorporates herein by reference paragraphs 1 through 127 as if fully set forth herein.

129.   By virtue of the acts described above, Defendants BP Construction and Robin Pitts made, used, or caused to be made or used, false records or statements – namely, false claims and false statements in the application for the BP Construction EIDL Targeted Advance – all of which were material to the false or fraudulent claims that were submitted to the United States and paid and approved by the SBA, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

130.   Defendants' false certifications and representations were made for the purpose of ensuring that the United States paid the false or fraudulent claims, which was a reasonable and foreseeable consequence of the Defendants' conduct.

131.   The United States was unaware of the falsity of the records, statements, and claims Defendants made, submitted, or caused to be made or submitted, and in reliance on the accuracy of these records or statements, the United States paid false or fraudulent claims.

132.   The false and fraudulent representations and claims Defendants knowingly made to the United States were material to the United States' decisions to make payments to Defendants.

133.   By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false and fraudulent claim.

**<u>COUNT X</u>**
**(Against Defendants BP Construction and Robin Pitts –**
**EIDL Supplemental Advance)**
**False Claims Act: False Records or Statements Material to**
**A False or Fraudulent Claim**
**(31 U.S.C. § 3729(a)(1)(B))**

134.   The United States re-alleges and incorporates herein by reference paragraphs 1 through 133 as if fully set forth herein.

135.   By virtue of the acts described above, Defendants BP Construction and Robin Pitts made, used, or caused to be made or used, false records or statements, namely, false claims and false statements in the application for the BP Construction EIDL Supplemental Targeted Advance, all of which were material to false or fraudulent claims that were submitted to the United States and paid and approved by the SBA, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

136.   Defendants' false certifications and representations were made for the purpose of ensuring that the United States paid the false or fraudulent claims, which was a reasonable and foreseeable consequence of the Defendants' conduct.

137.   The United States was unaware of the falsity of the records, statements, and claims Defendants made, submitted, or caused to be made or submitted, and in reliance on the accuracy of these records or statements, the United States paid false or fraudulent claims.

138.   The false and fraudulent representations and claims Defendants knowingly made to the United States were material to the United States' decisions to make payments to Defendants.

139.   By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false and fraudulent claim.

## COUNT XI
**(Against Defendants Dance Makers, Inc. and Robin Pitts – 2 PPP Loans)**
**False Claims Act: Reverse False Claims**
**(31 U.S.C. § 3729(a)(1)(G))**

140.    The United States re-alleges and incorporates herein by reference paragraphs 1 through 139 as if fully set forth herein.

141.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).  Defendants knowingly and improperly retained the Dance Makers PPP Loans despite knowing that Dance Makers had less than the number of employees represented in PPP Loan Numbers 1 and 2 applications, and thereafter knowingly and improperly obtained forgiveness of the loans and so avoided the obligation to repay the Dance Makers PPP Loan Numbers 1 and 2 that they understood they should never have received in the first instance.

142.    By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false and fraudulent claim.

## COUNT XII
**(Against Defendants See Saw Couture, Inc. and Robin Pitts – 2 PPP Loans)**
**False Claims Act: Reverse False Claims**
**(31 U.S.C. § 3729(a)(1)(G))**

143.    The United States re-alleges and incorporates herein by reference paragraphs 1 through 142 as if fully set forth herein.

144.    By virtue of the acts described above, Defendants knowingly made, used, or caused

31

to be made or used, a false record or statement material to an obligation to pay or transmit money to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).  Defendants knowingly and improperly retained the See Saw Couture PPP Loans despite knowing that See Saw Couture had no employees as represented in PPP Loan Numbers 1 and 2 applications, and thereafter knowingly and improperly obtained forgiveness of the loans and so avoided the obligation to repay the See Saw Couture PPP Loan Numbers 1 and 2 that they understood they should never have received in the first instance.

145.  By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false and fraudulent claim.

## COUNT XIII
### (Against Defendants BP Construction and Robin Pitts - EIDL)
### False Claims Act: Reverse False Claims
### (31 U.S.C. § 3729(a)(1)(G))

146.  The United States re-alleges and incorporates herein by reference paragraphs 1 through 145 as if fully set forth herein.

147.  By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).  Defendants knowingly and improperly retained the BP Construction EIDL despite knowing that BP Construction had no employees as represented in its EIDL application and inflated its monthly revenue and thereafter knowingly and improperly

avoided their obligation to repay the EIDL loan that the defendants understood BP Construction should never have received in the first instance.

148.  By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false and fraudulent claim.

## COUNT XIV
### (Against All Defendants)
### Unjust Enrichment

149.  The United States re-alleges and incorporates herein by reference paragraphs 1 through 148 as if fully set forth herein and pleads this Count in the alternative.

150.  By virtue of the acts described above, Defendants knowingly made materially false or fraudulent statements in violation of federal law that resulted in the United States and lenders acting on behalf of the United States in paying Defendants certain sums of money.  Defendants receipt of payments based on their false certifications are such that, in equity and good conscience, Defendants should not retain those payments.

151.  The United States has and continues to have a reasonable expectation of payment of the monies paid to Defendants based on false or fraudulent claims.

152.  Defendants should reasonably have expected and should reasonably be expected to pay to the United States the monies paid to Defendants based on false or fraudulent claims.

153.  Society's reasonable expectations of person and property would be defeated by Defendants nonpayment to the United States of the monies paid to Defendants.

154.  By reason of Defendants' acts, the United States has been damaged in an amount to be determined at trial.

## COUNT XV
### (Against All Defendants)
### Payment by Mistake

155.   The United States re-alleges and incorporates herein by reference paragraphs 1 through 154 as if fully set forth herein and pleads this Count in the alternative.

156.   The United States' agents paid the claims and statements Defendants submitted or caused to be submitted based upon mistaken or erroneous understandings of material fact.

157.   The United States and lenders acting on the United States' behalf, acting in reasonable reliance on the accuracy and truthfulness of the information contained in Defendants' claims and statements, paid Defendants certain sums of money, in an amount to be proven at trial, to which they were not entitled, and Defendants are thus liable to account and pay such amounts to the United States.

158.   By reason of the foregoing conduct of Defendants, the United States and lenders acting on behalf of the United States made payments under mistake of fact.

159.   As a result of these payments made by the United States and lenders acting on behalf of the United States under mistake of fact, the United States has sustained damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands judgment in its favor and against Defendants as follows:

(a).   On Counts I through XIII (False Claims Act),  under the False Claims Act, for the amount of the United States' damages to be established at trial, trebled as required by law, and such civil penalties as are authorized by law, and all such further relief the Court deems just and

proper.

(b).  On Count XIV (Unjust Enrichment), for the amounts by which the Defendants were unjustly enriched plus interest, costs, and expenses, and for all such other relief as the Court deems equitable;

(c).   On Count XV (Payment by Mistake of Fact), for the amount by which Defendants were paid by the SBA, plus interest, costs, and expenses, and for all such other relief as the Court deems equitable; and

(d).  Pre- and post-judgment interest, costs, and such other relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the United States requests a trial by jury.

Respectfully submitted,

KELLY O. HAYES
United States Attorney

By:  _____
TARRA DeSHIELDS
Assistant United States Attorney
General Bar No. 07749
Office of the United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800
*Counsel for Plaintiff United States*

Dated: March 27, 2026